(No. 60123.—

# JOHN W. UNGER, Appellant, v. CONTINENTAL ASSURANCE COMPANY *et al.*, Appellees.

*Opinion filed July 17, 1985.*

William D. Maddux & Associates, of Chicago (William D. Maddux and Bruce M. Lane, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Milo W. Lundblad,

Stephen D. Davis and Joshua G. Vincent, of counsel), for appellees.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, John W. Unger, M.D., filed a complaint in the circuit court of Cook County, setting forth a common law medical malpractice claim against defendant Carl R. Hines, M.D., and defendant Continental Assurance Company (CAC), the alleged employer of Hines. Plaintiff filed an amended complaint in which he added Continental Casualty Company (CCC) as a defendant, maintaining that he and Dr. Hines were employed by both CAC and CCC. The trial court ordered that plaintiff's amended complaint be stricken and CCC dismissed as a defendant, finding that plaintiff's failure to name CCC as a defendant, within the applicable statute of limitations, was not inadvertent. (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(d).) Further, the trial court granted summary judgment in favor of CAC on the ground that it was not the employer of Dr. Hines. Finally, the trial court found that the exclusive-remedy provision of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a)) barred plaintiff's cause of action and accordingly ordered that summary judgment be entered in favor of Dr. Hines. In affirming the decision of the trial court, the appellate court adopted the rationale of the trial court, holding that plaintiff's claims were barred by the exclusive-remedy provision of the Act. (122 Ill. App. 3d 376, 378.) The court found it unnecessary, therefore, to consider the propriety of the trial court's orders dismissing CCC as a defendant and granting summary judgment in favor of CAC. (122 Ill. App. 3d 376, 380.) We granted the plaintiff's petition for leave to appeal. 87 Ill. 2d R. 315(a).

The sole issue before this court, as raised in plaintiff's petition for leave to appeal and brief, is whether,

under the facts of this case, the exclusive-remedy provision of the Act bars plaintiff's common law malpractice action.

Plaintiff's complaint states that in March of 1977, while in the employ of CAC, he was examined by the defendant Dr. Hines, also an employee of CAC. During that examination a chest X ray was taken which revealed a malignant mass lesion. This lesion was not diagnosed, however, until another chest X ray was taken during a subsequent examination in November of 1978, which was also performed by Dr. Hines. Plaintiff maintains that the careless acts or omissions of the defendants caused him to suffer severe and permanent injuries, necessitating the expenditure of large sums of money for medical care, surgery and treatment and causing him to experience great physical and mental pain. Plaintiff seeks damages to compensate him as a result of the defendants' alleged negligence.

In its answer to the original complaint, CAC denied that it operated the CNA Medical Center or that plaintiff and Dr. Hines were its employees. Dr. Hines' answer stated that he and the plaintiff were employed by CCC and that plaintiff's alleged injuries arose out of and in the course of that employment. As such, the exclusive-remedy provision of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a)) was set forth as an affirmative defense.

CCC moved to dismiss the claim asserted against it in the amended complaint, contending that plaintiff's failure to include it as a party defendant until after the statute of limitations period had elapsed was not inadvertent and, thus, plaintiff could not claim the protection of section 2—616(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(d)). Pursuant to this provision, a cause of action against an individual not originally named as a defendant will not be barred due to the running of a statute of limitations if several terms

and provisions are satisfied, including the requirement that the failure to join the person was inadvertent. CCC maintained that the plaintiff knew or should have known that he was an employee of CCC prior to the expiration of the statute of limitations. Specifically CCC referred to plaintiff's discovery deposition, wherein he stated that over the last several years his paychecks had been issued by CCC.

In response to CCC's motion to dismiss, plaintiff argued that his failure to include CCC in his original complaint was inadvertent. Although CAC is a wholly owned subsidiary of CCC, plaintiff maintained that he was unaware of this fact. In his discovery deposition, plaintiff stated that both CAC and CCC were subsidiaries of CNA. In addition, plaintiff was told, at the time he was hired, that he was to be working for CAC, and his duties had not changed since he started with CAC, 15½ years earlier. Further, plaintiff received claim forms from CNA for his medical treatment which were titled "CNA; Continental Assurance Company." As such, plaintiff's position was that his confusion was caused by the corporate structure of the conglomerate, rendering his failure to name CCC inadvertent.

On the same day that CCC's motion to dismiss was filed, defendant Hines filed a motion for summary judgment, invoking the exclusive-remedy provision of the Act as the basis of his motion. In support of this motion, excerpts from plaintiff's discovery deposition were included. There, plaintiff's statements indicate that the company made an annual physical examination available, at company expense, and advised everyone to take advantage of this opportunity. It appears that officially the examination was not mandatory. In 1974, however, in response to plaintiff's inquiry as to the necessity of having a company physical, plaintiff was informed by his superior that he would be fired if he did not have the exami-

nation. Plaintiff testified that he continued to have the examination to fulfill this company requirement and also because of his belief in the need for annual examinations for preventative purposes. Further, plaintiff testified that he would consult with his personal physician rather than a physician affiliated with the CNA Medical Center if he had any illness requiring medical care.

Defendant Hines maintains that the examination conducted in 1977 was a requirement of plaintiff's continuing employment with CCC. Thus, any injury sustained as a result of his failure to diagnose plaintiff's cancerous lesion would arise out of and in the course of plaintiff's employment. Accordingly, plaintiff's only recourse would be through the workers' compensation system. Ill. Rev. Stat. 1981, ch. 48, par. 138.5(a).

Section 5(a) of the Act bars a lawsuit by one employee against a co-employee (or employer) for an injury sustained in the course of employment. Specifically, section 5(a) provides:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while *engaged* in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a).)

Further, section 11 of the Act provides:

> "The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises

or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act." Ill. Rev. Stat. 1979, ch. 48, par. 138.11.

Thus, an employee is precluded from maintaining a common law action against a co-employee *only* if the injured employee was "engaged in the line of his duty" at the time the injury was sustained. The "line of duty" test has been interpreted by this court in the exact manner as the general test of compensability under the Act. (*Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43; *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 274; *Christian v. Chicago & Illinois Midland Ry. Co.* (1952), 412 Ill. 171, 174.) The pivotal question in the instant case, therefore, is whether the injury alleged is compensable under the Act.

An injury will be found to be compensable if it "aris[es] out of and in the course of the employment." (Ill. Rev. Stat. 1979, ch. 48, par. 138.2.) "Arising out of" refers to the causal connection between the employment and the accidental injury, which exists when the injury's origin is in some risk related to the employment. (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366; *Jewel Companies v. Industrial Com.* (1974), 57 Ill. 2d 38, 40.) The requirement that the injury occur "in the course of" employment is concerned with the "time, place, and circumstances of the injury." (*Scheffler Greenhouses, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 361, 366.) An injury will generally be found to arise "in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and while he is fulfilling those du-

ties or engaged in something incidental thereto." *Chmelik v. Vana* (1964), 31 Ill. 2d 272, 278.

In the instant case, the injury complained of is the aggravation of a non-work-related disease due to the failure of defendant Hines to diagnose plaintiff's lung cancer during the 1977 examination in the company clinic. In response to the motion for summary judgment, as well as before the appellate court and this court, plaintiff argues that his injury, suffered as a result of Hines' failure to diagnose his cancerous condition, was not related to his employment, nor did it occur as a result of the treatment or examination of a work-related injury. Since the plaintiff had not sustained a compensable injury within the meaning of the Act, plaintiff contends that his proper remedy is a common law suit for damages. He would limit workers' compensation exclusivity, as to company physicians, to the *McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, and *McNeil v. Diffenbaugh* (1982), 105 Ill. App. 3d 350, factual patterns.

The plaintiff in *McCormick* suffered a work-related injury which was aggravated by the medical treatment administered by company physicians. In *McCormick* this court found that the dual-capacity doctrine enunciated in *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, does not apply when an employer provides medical treatment based on the employment relationship rather than as a treating physician. As such, the court held that the Act provides a covered employee with the exclusive means of recovery for aggravation of a compensable injury.

In *McNeil v. Diffenbaugh* (1982), 105 Ill. App. 3d 350, the appellate court extended the rule established in *McCormick* to the situation where an employee suffers a work-related injury and, in the course of his treatment, the company doctor fails to diagnose an existing, but non-work-related, disease. The court concluded that the plaintiff's injury was compensable under the Act, thus pre-

cluding an independent action against the co-employee defendant. The *McNeil* court looked to the status of the person injured at the time of the injury, rather than the nature or source of the injury, as the determinative factor in its compensability analysis.

While we find that the "status" approach utilized in *McNeil* oversimplifies a compensability analysis—status being just one of the factors to consider—we would agree that the plaintiff in *McNeil* suffered a compensable injury. Likewise, we find that the injury alleged in the instant case did arise out of and in the course of the plaintiff's employment, notwithstanding the fact that plaintiff was not initially treated by the company doctor for a line-of-duty injury.

Under the pleaded facts, the alleged injury was sustained "in the course of" plaintiff's employment. The examination occurred in a company clinic during working hours. Further, it is undisputed that the plaintiff and defendant Hines were co-employees. Moreover, we find that any injuries sustained by the plaintiff because of the failure to detect the lung cancer "arose out of" the employment relationship. Although plaintiff did not obtain medical care at the company clinic because he suffered an injury on the job, as in *McCormick* and *McNeil*, it is clear that there is a causal connection between the alleged injury and the employment.

To demonstrate this nexus, it is helpful to compare the circumstances in *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, and *Field Enterprises v. Industrial Com.* (1967), 37 Ill. 2d 335, with the facts in the instant case. In *Sjostrom,* the plaintiff was injured on his way to work while riding in a car driven by the defendant co-employee. The plaintiff and defendant had been assigned to a construction site some distance from the main office and their homes. As such, they were instructed, by their supervisor, to ride together to eliminate duplicate travel expenses. The court noted

that accidents occurring while an employee is going to or from work are normally held not to arise out of and in the course of employment. Nevertheless, the court found that, under the circumstances of the case, the plaintiff's injuries arose out of and in the course of his employment since his trip to work was "determined by the demands of his employment rather than personal factors." (*Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43-44.) Accordingly, his common law action for negligence was barred.

In the instant case, plaintiff's examination, like plaintiff Sjostrom's car ride, was "determined by the demands of his employment rather than personal factors." Plaintiff would not have had the company examination if it had not been perceived as a necessary condition of continued employment. The examination was, therefore, carried out in the course of the employment of plaintiff. Any injury resulting from negligent treatment during such an examination would necessarily "arise out of" the employment relationship.

We also find the reasoning in *Field Enterprises v. Industrial Com.* (1967), 37 Ill. 2d 335, compelling when applied to the facts of the case under consideration. The claimant in *Field Enterprises* was awarded workers' compensation for the death of her husband. The decedent, who had a history of hypertension, suffered a fatal heart attack while performing his normal job. In upholding the Industrial Commission's award of compensation, the court rejected the employer's contention that there was not a causal connection between the employment and death. The court found that to establish compensability it must be shown that " '*** some act or phase of employment was a causative factor in the ensuing injury. *** [It need not be] the sole causative factor nor even *** the principal causative factor but only *** *a* causative factor in the resulting injury.' The death or injury must have been the result of a risk to which the employee because of his employment was

exposed and not a risk to which any member of the general public is equally exposed." (Emphasis in original.) (37 Ill. 2d 335, 340.) The claimant's decedent in *Field Enterprises* and the plaintiff in the instant case suffered from non-work-related injuries. In each case, however, some condition of employment aggravated the disease. Thus, although the cases are factually dissimilar, we conclude that the causal connection between the employment and the injury is just as certain in the instant case as it was in *Field Enterprises*.

For the reasons stated above, therefore, we hold that any injury stemming from the negligence of defendant Hines during the 1977 examination arose out of and in the course of plaintiff's employment. Therefore, pursuant to section 5(a) of the Act, plaintiff is barred from maintaining a common law malpractice action. Thus, we need not reach the question of the propriety of the orders entered by the trial court in favor of CAC and CCC or whether, in fact, plaintiff has waived those issues.

We reach this decision mindful of several intermediate level New York cases (*In re Allen* (1980), 78 A.D.2d 917, 433 N.Y.S.2d 512; *Botwinick v. Ogden* (1982), 87 A.D.2d 293, 451 N.Y.S.2d 141) which, under similar circumstances, have found the complained-of injury to be noncompensable under their workers' compensation statute. (But see *Botwinick v. Ogden* (1983), 59 N.Y.2d 909, 453 N.E.2d 520, wherein the highest level court reversed, finding that where plaintiff had not first gone to the compensation board (as in the instant case) it was inappropriate for the courts to rule on the applicability of the State's workers' compensation law.) We cannot discern a significant difference between the causal connection of injury and employment in the instant case and the more common situation of the aggravation of a work-related injury. We are more persuaded, therefore, by the majority of jurisdictions which, under the latter circumstances, find that the negligence of

a company physician is subject to the exclusive-remedy provision. (See *Boyle v. Breme* (1983), 93 N.J. 569, 461 A.2d 1164; *Budzichowski v. Bell Telephone Co.* (1983), 503 Pa. 160, 469 A.2d 111; *Therrell v. Scott Paper Co.* (Ala. 1983), 428 So. 2d 33; *Jenkins v. Sabourin* (1981), 104 Wis. 2d 309, 311 N.W.2d 600; *Trotter v. Litton Systems, Inc.* (Miss. 1979), 370 So. 2d 244; *Garcia v. Iserson* (1974), 33 N.Y.2d 421, 309 N.E.2d 420; *Proctor v. Ford Motor Co.* (1973), 36 Ohio St. 2d 3, 302 N.E.2d 580.) Further we find that the section of Professor Larson's workers' compensation treatise which addresses the topic of an employer's negligent nondisclosure of a noncompensable disease (2A A. Larson, Workmen's Compensation, sec. 68.35, at 13—81—13—84 (1984)), is inapplicable, under the circumstances of this case, where there is no allegation that defendant Hines knew of plaintiff's condition in 1977 and intentionally withheld the information.

Accordingly, we affirm the judgment of the appellate court which held that plaintiff's action against the defendant doctor and his alleged employees was barred by the exclusive-remedy provision of the Act.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

Summary judgment motions should only be granted when no material fact is genuinely at issue. (See, *e.g., Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) Because I believe a material issue of fact is still in dispute, I am unable to join the majority's opinion.

As the majority points out, "[t]he sole issue before this court *** is whether, under the facts of this case, the exclusive-remedy provision of the Act bars plaintiff's common law malpractice action." (107 Ill. 2d at 81-82.) Central to that issue is whether the physical examinations administered to the plaintiff were mandatory or submitted to solely by choice. The physical examinations received by the

plaintiff were given without cost to the plaintiff. They may have been required by company policy. On the other hand, the examinations, as described in the company's internal office memoranda, might have been taken by the plaintiff on a voluntary basis. There is a factual dispute as to the reason for the physicals which cannot be resolved by a summary judgment motion. Consistent with my position regarding the coverage of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a)) set forth in my dissent in *McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352, 360, I believe that it is significant here to decide whether or not the examinations were required by the employer and that the determination of this fact is necessary in order to reach a correct result in this case. Therefore, summary judgment was improper.